## Commonwealth, ex rel., Whitehouse, v. Harris, Appellant.

*Public officers—Borough officers—Chief burgess—Borough contracts—Employment of burgess by public contractor—Act of May 28, 1907, P. L. 262—Quo warranto—Ouster.*

It is a violation of the Act of May 28th, 1907, P. L. 262, relating to borough officers, employees and contractors, for a borough official to be an employee of any person who contracts with the borough. A judgment of ouster was therefore properly entered in a quo warranto proceeding against a chief burgess where it appeared from the pleadings that during his term of office he was employed by the owner of a newspaper, who had furnished supplies and material to the borough for which the latter had paid.

Argued Feb. 17, 1915. Appeal, No. 24, Jan. T., 1915, by defendant, from judgment of C. P. Schuylkill Co., July T., 1914, No. 48, of ouster in case of The Commonwealth of Pennsylvania, Ex Relatione C. A. Whitehouse, District Attorney, v. Robert H. Harris. Before BROWN, C. J., MESTREZAT, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Suggestion for writ of quo warranto.

The following opinion was filed by KOCH, J.:

The pleadings show that the defendant is the chief burgess of the Borough of Tamaqua and is an employee of the estate of Robert Harris, deceased, which is engaged in said borough in the business of job printing and publishing a newspaper known as the Evening Courier. The borough obtained various supplies from said estate from time to time and paid for the same, since the defendant has been in office by virtue of his election as chief burgess, and we are asked to pronounce judgment in favor of the Commonwealth and oust the defendant.

An act entitled, "An act relating to borough officers, employees, and contracts; and providing for the pun-

ishment of any violation of its provisions," approved the 28th day of May, 1907, P. L. 262, provides: That it shall not be lawful for any burgess or member of council of any borough, or any officer, agent or employees thereof, to be in any way interested, either directly or indirectly in any contract for the sale or furnishing of any supplies or materials to be furnished to or for the use of such borough, or to receive any reward or gratuity from any person interested in such contract or sale; nor shall any such burgess, member of council, officer, agent, or employee of any borough be a member of any partnership, or a stockholder or officer of any corporation, or agent or employee of any individual partnership, or corporation, in any way interested in any contract for the sale or furnishing of any supplies or materials to be furnished to or for the use of, or any work to be done for, such borough; and any person violating these provisions, or any of them, shall forfeit his office or appointment in such borough, and also shall be guilty of a misdemeanor, and upon conviction thereof be sentenced to pay a fine not exceeding five hundred dollars."

By the defendant's own admission, more than a score of dealings between said estate and the borough were had; but he avers that he was in no way interested and was without knowledge concerning them. In his supplemental answer the defendant offers to pay the costs of this proceeding, and avers that the newspaper of which he is an employee will refrain, during his continuance in office, from furnishing any supplies or materials to the said borough, and he prays the court to suspend judgment of ouster.

The statute would seem, under certain circumstances to convict of a criminal act one entirely innocent of any wrongdoing, and some of the most valuable borough officers may be compelled to give up their jobs or forfeit their offices. A miner, for instance, may in no way be connected with the affairs of the borough in which he

lives, if perchance, the council house be supplied with coal, without the miner's knowledge, by a local company for which he happens to work; and every member of perhaps a thousand workmen in and about the mines of such company would be barred from being chief burgess, or member of council, officer, agent, or employee of the borough. Such workmen could not even be the high constable of the town. The act is penal; it is clear, and its purposes must not be frustrated. Its spirit must be considered when its application is approached, and no one should be punished under its provisions unless a violation of at least one of the provisions can be fixed upon the person sought to be punished.

Under the motion for judgment of ouster, we accept as true all the averments in the defendant's answer. He says (inter alia), "It is true he is a son of Robert Harris, deceased, but is not interested in the estate of said deceased further than to receive a salary as an employee of Sophia M. Harris"; that she "is the present owner of the business of the Evening Courier and that respondent has no other present interest in said business than as an employee under salary......He avers Sophia M. Harris is the one who conducts the business," and "that he was in no way interested, either directly or indirectly, in any contract for the sale or furnishing of supplies or materials to the Borough of Tamaqua by the Evening Courier or anyone else." The supplies were ordered by other officers of the borough, without any knowledge of the same on the part of the respondent, and were paid for with orders without his signature, according to the defendant's averments.

The relationship between Mrs. Harris and the defendant is of the closest character. In its nature it could not be closer. The statute is more than seven years old; ignorance of its existence or its contents is not averred, nor could ignorance well be averred, because it directly concerns the office which the defendant has held for more than a year. In the act the bur-

gess is twice the first named of all borough officers who are required to observe its provisions. It is a public officer's duty to acquaint himself with the statutory laws respecting his office. It behooves him to do so if he be willing to do his whole duty and a plea of ignorance in such a case would show neglect and want of diligence on the part of the officer. It would argue naught in his favor on a plea for judicial clemency for violation of statutory provisions.

The plaintiff is entitled to final judgment in this case, and upon the whole record it is entitled to judgment in its favor. The statute may seem harsh in its provisions, but it is not in our power to legislate. We are obliged to construe and administer the law as we find it.

We are quite sure that under the provisions of the Act of June 19, 1911, P. L. 1055, we could suspend sentence if the defendant had been prosecuted and convicted for a misdemeanor under the Act of May 28, 1907, P. L. 262, and we might do so respecting the imposition of a fine, upon proper application, were nothing more shown against the defendant than appears in the pleadings in this case; but a suspension even then would not mean the final disposition of the case, because the defendant might be called at any time and have the sentence of the law pronounced upon him. But we have no alternative in the civil action when the plaintiff demands judgment upon the record.

The court entered judgment of ouster. Defendant appealed.

*Error assigned* was the judgment of the court.

*Arthur L. Shay,* for appellant.

*C. E. Berger,* with him *J. O. Ulrich,* for appellee.

PER CURIAM, March 22, 1915:

The judgment of ouster in this case is affirmed on the opinion of the learned court below directing it to be entered.